IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**EXECUTION SCHEDULED FOR NOVEMBER 5, 2026 @ 6:00 p.m.**

JESSE GUARDADO,

*Plaintiff,*

v.

Case No.: 3:26-cv-02596
CAPITAL CASE

RICHARD COMERFORD,
Secretary, Florida Department of Corrections,
in his official capacity

and

RANDALL POLK,
Warden, Florida State Prison,
in his official capacity

*Defendants.*
_____________________________________________/

## JOINT RESPONSE TO MOTION TO STAY

On October 8, 2026, Guardado, represented by Capital Habeas Unit of the Office of the Federal Public Defender of the Northern District of Florida (CHU-N), filed emergency motion for an injunction under the All Writs Act, or, alternatively, a motion to stay the execution. He seeks an

injunction to litigate his Eighth Amendment challenge to Florida's lethal injection protocol at a more leisurely pace than the pace of warrant litigation. But the All Writs Act does not apply under *Dunn v. McNabb*, 583 U.S. 941 (2017). Instead, Guardado must establish the four factors required by the traditional stay standard. *Glossip v. Gross*, 576 U.S. 863, 876 (2015); *Humphreys v. Comm'r, Ga. Dep't of Corr.*, 161 F.4th 1300, 1306 (11th Cir. 2025). But Guardado fails at least three of the four factors required for a traditional stay, including the critical first factor of showing a substantial likelihood of success on the merits. There is not a substantial likelihood of success on the merits of his Eighth Amendment claim in light of the Supreme Court's own observation that it has never held a lethal injection protocol violates the Eighth Amendment and Supreme Court precedent rejecting challenges based on speculation and conjecture. The motion for a stay of the execution should be denied.

Short procedural history of pending § 1983 litigation

On September 28, 2026, Guardado, represented by CHU-N filed a 42 U.S.C. § 1983 suit challenging Florida's lethal injection protocol on Eighth Amendment grounds. (Doc. #1). In his § 1983 complaint, Guardado is

raising an Eighth Amendment challenge to Florida's lethal injection protocol. He asserts that pulmonary edema will occur as a result of the massive doses of drugs used in the protocol and that, if expired etomidate is used, despite the massive dose of that hypnotic drug that is given under Florida's protocol, the efficiency of the etomidate will be affected and he will not be sufficiently unconscious. He contends that that series of events will cause him to suffer from a sensation of suffocation or "air hunger," relying on the Eleventh Circuit's recent decision in *Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-11864, 2026 WL 1651147 (11th Cir. June 8, 2026) (unpublished).

On October 8, 2026, the Defendants filed a joint motion asserting the § 1983 suit should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for three reasons: (1) it is untimely under the applicable statute of limitations; (2) failure to exhaust the claim, as required by the Prisoner Litigation Reform Act (PLRA); and (3) for failure to state a valid Eighth Amendment claim under controlling Supreme Court precedent. (Doc. #13).

The Rule 12(b)(6) motion to dismiss is currently pending before this Court. Guardado's response to the motion to dismiss is due to be filed Wednesday, October 14, 2026, by 12:00 p.m., under this Court's order.

## ARGUMENT IN RESPONSE TO MOTION TO STAY

Guardado may not invoke the All Writs Act, 28 U.S.C. § 1651, under the controlling Supreme Court precedent of *Dunn v. McNabb*, 583 U.S. 941 (2017). Rather, he must meet the traditional stay standard which requires a showing of (1) a substantial likelihood of success on the merits; (2) irreparable injury from the denial of a stay; (3) injury to the other party from the stay; and (4) a stay would not be adverse to the public interest. *Glossip v. Gross*, 576 U.S. 863, 876 (2015); *Humphreys v. Comm'r, Ga. Dep't of Corr.*, 161 F.4th 1300, 1306 (11th Cir. 2025). Guardado must establish all four factors but he fails at least three of the four factors, including the critical first factor of showing a substantial likelihood of success on the merits.

### The All Writs Act cannot be invoked

Guardado first argues that this Court should issue an injunction under the All Writs Act rather than use the traditional stay standard to determine whether a stay of the execution should be entered. (Doc. #11 at 6-16). The All Writs Act, 28 U.S.C. § 1651(a), provides: "The Supreme Court and all courts established by Act of Congress may issue all writs

necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." (emphasis added).

But it is not "agreeable" to the "principles of law" to use a lower standard to grant a stay of execution than the stay standard established by the Supreme Court in *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004) (explaining that before granting a stay of execution, "a district court must consider not only the likelihood of success on the merits and the relative harms to the parties" and whether the inmate delayed unnecessarily in bringing the claim). The All Writs Act is not properly invoked as a basis for a stay of execution under *Dunn v. McNabb*, 583 U.S. 941 (2017).

In *Grayson v. Ala. Dep't of Corr.*, No. 17-14612-P, 2017 WL 4767741 (11th Cir. Oct. 18, 2017), the Eleventh Circuit affirmed a district court's injunction prohibiting an execution, pursuant to the All Writs Act, 28 U.S.C. § 1651. The district court entered the injunction finding it would be both "impracticable" and "impossible" to "give due consideration to and resolve the merits of McNabb's action prior to his October 19 execution date, given the extensive directives and mandates the Eleventh Circuit had issued" in the case. *Id.* at *3. The district court concluded that, although McNabb's motion for a stay failed under the traditional stay

standard of *Hill v. McDonough*, 547 U.S. 573, 584 (2006), his motion for an injunction under the All Writs Act succeeded. *Id*. at *2. So, the district court denied a traditional stay but granted an All Writs injunction. The *Grayson* panel first noted that two of the previously All Writs injunctions affirmed by the Eleventh Circuit in method of execution challenges had been vacated by the Supreme Court without discussion. *Grayson*, 2017 WL 4767741 at *1. The Eleventh Circuit relied on the All Writs Act and invoked *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099-1102 (11th Cir. 2004). *Id*. at *1. The panel noted that, under the *Klay* injunction standard, a district court may issue an All Writs injunction "simply" by pointing "to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Id*. at *2. The panel affirmed the injunction.

The Supreme Court, however, vacated that All Writs injunction. *Dunn v. McNabb*, 583 U.S. 941 (2017). The *McNabb* Court explained that inmates seeking time to challenge the manner in which the State plans to execute them "must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits" citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006). The High Court continued the

"All Writs Act does not excuse a court from making these findings." The Supreme Court concluded that the district court had abused its discretion by issuing an All Writs injunction "without finding" that the inmate "has a significant possibility of success on the merits" as required by the traditional stay standard and vacated the All Writs injunction.

Guardado improperly relies on cases granting or affirming All Writs injunctions in a capital cases.[1] These cases, however, were decided before *Dunn v. McNabb*, 583 U.S. 941 (2017), and are all invalid in the wake of that Supreme Court decision.

It is clear from the Supreme Court's decision in *McNabb* that the traditional stay standard of *Nelson* and *Hill* controls stays of executions. Guardado may not invoke the All Writs Act, 28 U.S.C. § 1651, as a basis to obtain an injunction in an attempt to evade the requirements of the

---

[1] *Burton v. Comm'r, Ala., Dep't of Corr*, No. 17-11536, 2017 WL 4457572 (11th Cir. Sept. 29, 2017) (issuing an All Writs injunction itself enjoining an execution), *vacated by*, *Dunn v. Borden*, 583 U.S. 911 (2017); *Grayson v. Dunn*, No. 2:12-cv-000316 2017 WL 4638594, at *3-*5 (M.D. Ala. Oct. 16, 2017) (denying a traditional stay of the execution but granting an All Writs injunction); *McNabb v. Warden*, No. 17-14612, 2017 WL 4767741 (11th Cir. Oct. 18, 2017). *McNabb* is the same case as *Grayson*, that the Defendants discussed above.

traditional stay standard. Rather, he must meet the traditional stay standard.

**Traditional Stay Standard**

The traditional stay standard requires the movant to show: (1) a substantial likelihood of success on the merits; (2) an irreparable injury unless the stay is issued; (3) a stay would not substantially harm the other litigant; and (4) a stay would not be adverse to the public interest. *Humphreys v. Comm'r, Ga. Dep't of Corr.*, 161 F.4th 1300, 1306 (11th Cir. 2025) (denying a stay of execution to litigate a § 1983 suit raising an equal protection claim); *Glossip v. Gross*, 576 U.S. 863, 876 (2015).

An inmate "seeking a stay of execution must satisfy all of the requirements for a stay." *Bowles v. Desantis*, 934 F.3d 1230, 1246 (11th Cir. 2019) (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)) (emphasis in original); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (stating that a stay of execution "is appropriate only if the moving party establishes all" of the four traditional factors for granting a stay). The Court in *Hill* stated that inmates "seeking time to challenge the manner in which the State plans to

execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits. *Hill*, 547 U.S. at 584 (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–896 (1983)).

Substantial likelihood of success on the merits

The first factor of showing a substantial likelihood of success on the merits is the most crucial factor. *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (stating the "most important question regarding a stay of execution is whether the petitioner is substantially likely to succeed on the merits of his claim" citing *Jones v. Comm'r. Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016)); *Bowles v. Desantis*, 934 F.3d 1230, 1247 (11th Cir. 2019) (noting the Eleventh Circuit has often declined to consider the remaining stay factors when an inmate has not shown a substantial likelihood of success on the merits citing cases). The United States Supreme Court has vacated a stay based on that factor alone. *Barr v. Lee*, 591 U.S. 979, 980 (2020). And the key word is a "substantial" likelihood.

There is no substantial likelihood of success on the merits of Guardado's combination Eighth Amendment claim. Florida's current

three-drug protocol consists of etomidate, a hypnotic, rocuronium bromide, a paralytic, and potassium acetate, which causes cardiac arrest. (Doc. #1 at ¶21 citing App. A at 7-8).

Florida's current protocol does not violate the Eighth Amendment test established by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), and *Glossip v. Gross*, 576 U.S. 863 (2015), for an execution method. That test requires that the plaintiff show a "substantial" risk that the protocol is "sure or very likely" to cause "serious illness and needless suffering." *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 50). As the Supreme Court itself observed, it "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Barr v. Lee*, 591 U.S. 979, 980 (2020).

Critical to the Eleventh Circuit's conclusion that Alabama's gas protocol violated the Eighth Amendment in the recent case of *Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-11864, 2026 WL 1651147 (11th Cir. June 8, 2026) (unpublished), was that the inmate was conscious. The Eleventh Circuit's reasoning in *Lee* does not apply to any protocol where the inmate is unconscious. In stark contrast to Alabama's gas protocol, Florida inmates are given a "massive dose of 200 milligrams of

etomidate" which renders them unconscious "within one minute" followed by a "consciousness check."[2] Any pulmonary edema that occurs during execution will occur when the Florida inmate is unconscious. *Cf. In re Ohio Execution Protocol Litig.*, 946 F.3d 287, 289-91 (6th Cir. 2019) (rejecting an Eighth Amendment challenge to Ohio's midazolam protocol based on pulmonary edema because the inmate would be "deeply sedated").

The claim regarding edema ignores the consciousness check that is part of Florida's protocol. Florida's current protocol mandates a consciousness check after the etomidate is administered. *Baze v. Rees*, 553 U.S. 35, 119-20 (2008) (Ginsburg, J., dissenting) (condemning

---

[2] *Long v. State*, 271 So. 3d 938, 944 (Fla. 2019) (noting the testimony "that the massive dose of 200 milligrams of etomidate would produce such a deep state of burst suppression and unconsciousness" it would render a person "unaware of noxious stimuli"); *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (quoting the drug insert of etomidate noting that "intravenous injection of etomidate produces hypnosis characterized by a rapid onset of action, usually within one minute"); *Lukehart v. State*, __ So. 3d __, 51 Fla. L. Weekly S139, 2026 WL 1480328, at *4 (Fla. May 27, 2026) (noting the "well-established fact that the administration of etomidate will render him unconscious likely within one minute" quoting *Rogers v. State*, 409 So. 3d 1257, 1268 (Fla. 2025), "after which a consciousness check is required and the execution cannot proceed until he is rendered unconscious" quoting *King v. State*, 434 So. 3d 969, 976 n.9 (Fla. 2026)), *cert. denied*, *Lukehart v. Florida*, 146 S. Ct. 2697 (June 1, 2026).

Kentucky's protocol for not including a consciousness check before the lethal third drug of potassium chloride is administered and detailing with approval Florida's multi-step consciousness check and advocating the adoption of similar measures to ensure the inmate is unconscious before the final lethal drug is administered). Guardado will not have a sensation of suffocating because he will be unconscious from the first drug in the protocol before any edema occurs.

Guardado attempts to skirt that obvious flaw in the pulmonary edema claim by adding the possible use of expired etomidate and then speculates that if that error occurs, there is a possibility of air hunger. But this domino effect theory is speculative in that it requires the "expired" etomidate to be effective enough to render him unconscious during the consciousness check but not effective enough to keep him unconscious for the next 10 minutes until the third drug is administered. It requires a sort of "just right" Cinderella scenario regarding the efficacy of the "expired" etomidate. But mere possibilities are not sufficient to establish an Eighth Amendment violation regarding a method of execution. Rather, it must be "sure or very likely" under the controlling *Baze/Glossip* test. *Baze*, 553 U.S. at 50 (emphasis in original); *Glossip*, 576 U.S. at 877 (emphasis in

original).

Such speculation cannot substitute for evidence. *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1264-65 (11th Cir. 2014) (explaining that speculation about a drug or its possible maladministration "cannot substitute for evidence that the use of the drug is "sure or very likely to cause serious illness and needless suffering" quoting *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)). Indeed, *Glossip* itself involved a somewhat similar Eighth Amendment claim that was rejected by the Supreme Court. Glossip argued Oklahoma's three-drug protocol violated the Eighth Amendment based mainly on the prior execution of another inmate, Lockett, who moved when the third drug in the protocol was being injected, despite a consciousness check, because the drugs leaked into his tissue instead of entering his blood stream. *Glossip*, 576 U.S. at 872. Oklahoma increased the dose of the first drug and adopted other safeguards in response to that execution. *Id*. at 872-73, 886.

The Court rejected the claim for four reasons including that he bore the burden of persuasion and he did not meet that burden. *Glossip*, 576 U.S. at 881, 888. The *Glossip* Court also concluded that the higher dose of midazolam was "likely to render an inmate insensate." *Id*. at 881, 888. The

Court found that there was not a "substantial risk of severe pain." *Id*. at 882. The Court found much of the assertions to be too "speculative" to warrant relief. *Id*. at 887. The Court also rejected the Eighth Amendment challenge because, aside from the Lockett execution, 12 other executions had been conducted using the same three-drug protocol "without any significant problems." *Id*. at 892.

The last reason relied on by the *Glossip* Court for rejecting the Eighth Amendment challenge applies with even greater force to this Eighth Amendment challenge. Florida has carried out scores of executions using its current protocol "without any significant problems." Even if Smithers had a lower dose of etomidate for some unexplained reason than the other executed inmates, that one factoid, when compared to the more than 40 successful executions using the current protocol, does not amount to a viable Eighth Amendment challenge. And certainly does not amount to a viable Eighth Amendment challenge when the toxicology reports from the other executed inmates show more typical amounts of etomidate. This Court should follow *Glossip* and reject the Eighth Amendment challenge to Florida's current protocol.

Guardado's Eighth Amendment claim involves a speculative domino

effect from the use of expired etomidate that is itself based on conjecture from inventory logs.

Guardado fails the first and most crucial traditional stay factor.

Irreparable injury

The Eleventh Circuit has rejected the argument that irreparable injury from an execution is "self-evident" because that harm is equally "true" of every motion for a stay of execution. *Humphreys*, 161 F.4th at 1312. The Eleventh Circuit explained that an inmate must show how he will be irreparably injured by the underlying claim, not as a consequence of his original criminal conviction and death sentence. *Id.* at 1312. The "irreversible nature of the death penalty cannot, on its own, justify a stay." *Id.* Even if Guardado satisfies this second factor, he fails the other factors

Balance of harms

The only harm that Guardado can legitimately point to from the denial of a stay is that the pace of the litigation under a warrant will be substantially increased. No doubt, he would prefer the pace of the litigation regarding Florida's lethal injection protocol in *Brant* which has

been pending since 2013. *Brant v. Palmer*, No. 3:13-cv-00412 (M.D. Fla).[3]

But the harm, if any, from an increased pace of litigation must be balanced against the State of Florida's "strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Bowles v. Desantis*, 934 F.3d 1230, 1247 (11th Cir. 2019) (noting the Eleventh Circuit has emphasized the State's interest in real finality and timely enforcement of valid criminal judgments citing cases and denying a motion to stay an execution to litigation a § 1983 suit). The Supreme Court has observed that a stay of execution is "an equitable remedy" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

Guardado entered a guilty plea to this murder on October 19, 2004, nearly 22 years ago, and his convictions and death sentence became final

---

[3] CHU-N improperly conflates the irreparable injury factor with the balance of harms factor when asserting his harm is "wanton infliction of pain" he will suffer if his Eighth Amendment rights are violated during the execution. (Doc. #11 at 24). That argument may supply the basis for assertion of irreparable injury under the second factor but it is not properly used as part of the third factor.

on February 19, 2008, when the Supreme Court denied review from the direct appeal over 18 years ago. *Guardado v. Florida*, 552 U.S. 1197 (2008). And his § 2254 federal habeas petition was denied in 2024. *Guardado v. Sec'y, Fla. Dep't of Corr.*, 112 F.4th 958 (11th Cir. 2024). The State has a particular interest in the finality of the death sentence after federal habeas review. *Calderon v. Thompson*, 523 U.S. 538 (1998). As the Supreme Court has explained in a case involving recalling a mandate, the State has a particular interest in finality after federal habeas review because, at that point, the State has "borne for years the significant costs of federal habeas review." *Thompson*, 523 U.S. at 556. "When lengthy federal proceedings have run their course and a mandate denying relief has issued, finality acquires an added moral dimension." *Id*. at 556. After federal habeas review, when the inmate "has already had extensive review of his claims in federal and state courts," the "State's interests in finality are all but paramount." *Id*. at 557. In the absence of a strong showing of actual innocence, "the State's interests in actual finality outweigh the prisoner's interest in obtaining yet another opportunity for review." *Id*. at 557. Guardado confessed and entered a guilty plea, so there can be no claim of actual innocence.

The balance of harms clearly favors the State. Guardado also fails the third traditional stay factor.

Public interest

The public interest weighs strongly against any stay of the execution being granted. *Humphreys*, 161 F.4th at 1312 (concluding the victims' interest in the timely enforcement of the death sentence was "enough for the public interest to weigh against a stay"). As the Supreme Court has observed, the people of a state and the surviving victims of capital crimes "deserve better" than the "long delays that now typically occur between the time an offender is sentenced to death and his execution." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019). Rather, method-of-execution challenges should be "resolved fairly and expeditiously." *Id*. at 150 (emphasis added). Contrary to Guardado's assertion, litigation of this § 1983 suit at the normal pace will not involve a "minimal" delay. (Doc. #11 at 25). The litigation in *Brant* involving a similar claim has been pending since 2013 and discovery in that case is only now nearing completion.

The Eleventh Circuit has repeatedly rejected the argument, often made by the capital defense bar, that the State will only suffer a "fleeting

inconvenience" from having to reschedule the execution later, if a stay is granted. *Bowles*, 934 F.3d at 1247-48 (quoting *Brooks v. Warden*, 810 F.3d 812, 824-25 (11th Cir. 2016)).

Guardado fails the fourth traditional stay factor as well because any stay would be adverse to the public interest.

In sum, stays of execution "should be the extreme exception, not the norm." *Bucklew*, 587 U.S. at 150. Federal courts can and should protect settled state judgments from undue interference by invoking their equitable powers to dismiss or curtail suits that are based on speculative theories. *Id*. at 151. Guardado's Eighth Amendment claim involves a speculative domino effect from the use of expired etomidate that is itself based on conjecture.

Guardado fails the first, third, and fourth traditional stay factors. And, therefore, the motion for a stay of execution should be denied.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

/s/ *Charmaine Millsaps*
CHARMAINE M. MILLSAPS
SPECIAL COUNSEL,
ASSISTANT ATTORNEY GENERAL

FLORIDA BAR NO. 00989134
OFFICE OF THE ATTORNEY
GENERAL OF FLORIDA
THE CAPITOL, PL-01
TALLAHASSEE, FL 32399-1050
(850) 414-3300

COUNSEL FOR DEFENDANTS

CERTIFICATE OF COMPLAINCE WITH RULE 3.01(b)

I certify that this **JOINT RESPONSE TO MOTION TO STAY** is within the 20-page limit governing the length and content of response to motions under the local rules. M.D. Fla. Loc. R. 3.01(c).

/s/ *Charmaine Millsaps*
Charmaine M. Millsaps
Special Counsel
Asst. Attorney General

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **JOINT RESPONSE TO MOTION TO STAY** has been furnished by CM/ECF to **SEAN GUNN** Assistant Public Defender of CHU-N, 227 N. Bronough Street. Tallahassee, Fl 32301; phone: (850) 942-8818; email: sean-gunn@fd.org this 12th day of October, 2026.

/s/ *Charmaine Millsaps*
Charmaine M. Millsaps
Special Counsel
Asst. Attorney General