**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**JESSE GUARDADO,**

Plaintiff, Case No. 3:26-cv-2596

v. **CAPITAL CASE**

**RICHARD COMERFORD,** Secretary,
Department of Corrections,
in his official capacity;

**EXECUTION OF STATE DEATH SENTENCE SET: NOVEMBER 5, 2026 AT 6:00 P.M.**

and

**RANDALL POLK,** Warden,
Florida State Prison,
in his official capacity,

Defendants.
_________________________________/

## REPLY IN SUPPORT OF INJUNCTION OR STAY OF EXECUTION

### I. All-Writs-Act injunction

With respect to Guardado's request for an injunction under the All Writs Act, Defendants assert that this Court is powerless to order an All-Writs-Act injunction under the Supreme Court's brief emergency-docket opinion in *Dunn v. McNabb*, 138 S. Ct. 369 (2017) (Mem.). ECF No. 16 at 2. In *McNabb*, the Court stated that the All Writs Act "does not excuse" a court from also making findings on the traditional stay factors, including a significant possibility of success on the merits, and vacated an

injunction that had issued without a finding on that factor. 138 S. Ct. at 369. Thus, while this Court may consider the fact that Guardado's complaint was filed prior to the issuance of his death warrant in determining whether the All Writs Act supports an injunction, or that the traditional stay factors have been established, this Court must in either case determine that Guardado has shown a significant possibility of success on the merits. Guardado concedes that Defendants' argument in this regard is correct, and that he overlooked the Supreme Court's emergency-docket opinion. Candidly, *McNabb* alters the equation before this Court, and to the extent its directive conflicts with Guardado's request for a traditional-stay-factor analysis in the alternative, Guardado respectfully amends that request.

But that does not mean, as Defendants insist, ECF No. 16 at 2, that "the All Writs Act does not apply" in these circumstances at all. *See, e.g.*, *LeCroy v. United States*, 975 F.3d 1192, 1197 (11th Cir. 2020) (stating that the All Writs Act applies in extraordinary circumstances, although it cannot "independently authorize" a stay of execution). Guardado diligently filed this claim prior to the signing of the death warrant, and—unlike McNabb—has already sufficiently satisfied the stay factors including his substantial likelihood of success. Thus, Defendants' assertion of this Court's powerlessness is not quite correct. The most prudent course in light of *McNabb* is for the Court to consider the All-Writs-Act equities in tandem with the traditional stay factors, each of which Guardado fully analyzed in his motion.

## II. Guardado has a substantial likelihood of success on the merits

On October 9, 2026, this Court ordered Defendants to "address Plaintiff's argument that the FDOC's administration of expired drugs presents a substantial risk of serious harm." ECF No. 15. Defendants have failed to address this Court's concerns, instead defaulting to a defense of the protocol generally without explaining the maladministration or documented errors in the drug logs Guardado has raised. As Guardado has demonstrated, the risk of harm that may result from the maladministration of the protocol constitutes a strong showing of a substantial likelihood of success on the merits of an Eighth Amendment claim.

As will be discussed in more detail in Guardado's forthcoming response to Defendants' motion to dismiss, while Defendants attempt to boil Guardado's claim down to a "pulmonary edema claim," ECF No. 16 at 12, dismissing the evidence of maladministration memorialized in their own records, Defendants' own negligence when carrying out executions throughout 2025 and 2026 is the basis of this claim—not a generalized challenge to the protocol and the risks it usually carries. As a result, Defendants' argument, which assumes that the protocol is operating properly and inmates are indeed unconscious, is unavailing. *See* ECF No. 16 at 10-11.

While Defendants tout the 35 executions carried out in 2025 and 2026 as having occurred without incident, Defendants themselves are speculating that prior executions have been "successful." ECF No. 16 at 14. In contrast to the recorded

instances of maladministration, Defendants' confidence in this position stems from the administration of a paralytic drug designed to create an outward sense of peace. Should prisoners regain consciousness following the administration of a degraded sedative drug, or if other factors cause the sedative drug to wear off, the paralytic would not only suppress any indications of consciousness but create an added layer of torture as it restricts all diaphragm movement. ECF No. 1 at ¶ 41. Inmates look peaceful as they are "unable to move, speak, or otherwise demonstrate awareness" and unable to "communicate [that] awareness or distress." ECF No. 1-6 at ¶ 8.

Lack of sedation and awareness during an execution, whether from an ineffective sedative drug or improper dosages of other drugs, is squarely unconstitutional. *See Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-11864, 2026 WL 1651147, at *7 (11th Cir. Jun. 8, 2026) (deeming a method of execution involving one to three minutes of air hunger unconstitutional); *Baze v. Rees*, 553 U.S. 35, 53 (2008) (observing it is "uncontested" that a three-drug protocol would be "constitutionally unacceptable" absent adequate sedation).

Contrary to Defendants' assurance, which is more correctly an observation of chemically induced paralysis, Guardado has provided proof, which remains uncontroverted, that internal FDOC records include documented errors and maladministration of the protocol. Guardado's claim, labeled "conjecture" by Defendants, ECF No. 16 at 15, is supported by anomalies in recently produced

toxicology reports indicating inconsistent administration of the protocol continuing beyond the period captured by the records. *Id.* at ¶ 34. Defendants claim that the documented disparity in postmortem etomidate levels is due to an "unexplained reason," ECF No. 16 at 14, without showing any concern to further investigate the reason and dismissing the documented errors contained in the drug logs.

As Guardado alleged, an expired dose of etomidate has reduced potency and loses the manufacturer's guarantee that "the product will continue to meet its established specifications for potency, purity, and quality." ECF No. 1 at ¶ 26. After the expiration date, "the administered product will likely not produce the full pharmacological effect expected from the labeled dose." *Id.* As pharmaceutical expert Dr. Michaela Almgren opined, "the intended level of unconsciousness may not be achieved or may not be maintained for a sufficient period before subsequent drugs are administered." ECF No. 1-6 at ¶ 27. This is not remedied by Defendants' massive bolus dose as "the relationship between the dose of etomidate and duration of unconsciousness is not linear." *Id.* at ¶ 7.

Defendants attempt to dismiss the documented errors in the drug logs due to the protocol's requirement that consciousness checks are performed. ECF No. 16 at 12. But emphasis on the consciousness checks ignores Guardado's argument that consciousness checks are not a reliable indication of consciousness for the whole procedure, particularly here, where the same staff tasked with assessing

consciousness have strayed from the protocol in 8 out of 13 executions documented in the proffered records.[1] Moreover, Defendants' consciousness checks have no bearing on whether, or how, a prisoner is processing pain. ECF No. 1 at ¶ 72.

In that regard, Defendants' reliance on the Supreme Court's holding in *Glossip* offers little guidance. Indeed, the cited language in *Glossip* refers to the Court's crediting of Oklahoma's addition of safeguards following the disastrous execution of Clayton Lockett. *See Glossip v. Gross*, 576 U.S. 863, 872 (2015) (noting that after the failed execution of Lockett, Oklahoma conducted an investigation which "took five months to complete" and "recommended several changes to Oklahoma's execution protocol," which Oklahoma implemented). Here, Defendants have shown no internal inquiry or audits after being put on notice of the errors when they were first raised. *See Walls v. Dixon*, 4:25-cv-0488, ECF No. 1 (N.D. Fla. Nov. 26, 2025).

Defendants' reliance on *Wellons v. Commissioner, Georgia Department of Corrections*, 754 F.3d 1260, 1264-65 (11th Cir. 2014), is similarly misplaced as Guardado's claim is supported by documented proof created by Defendants

[1] In addition to the four instances where Defendants administered an expired sedative, Defendants also documented the administration of inappropriate dosages of drugs on multiple occasions, preparing half of the required dosage of rocuronium bromide during the execution of Thomas Gudinas, ECF No. 1-5 at 8, an insufficient dosage of potassium acetate during the execution of Anthony Wainwright, *id.* at 6, and administering drugs unauthorized by the protocol during the executions of Edward James and Michael Tanzi. *Id.* at 16. This data amounts to eight documented transgressions out of 13 documented executions in 2025.

themselves. *Wellons* was a case concerning the right to obtain documentation similar to what Guardado already provided here—information that merits further inquiry. As Justice Sotomayor noted in *Trotter*, the errors contained in the records Guardado provided reflect "at least the possibility that recent Florida executions have involved—in addition to expired drugs—incorrect drug doses, the use of nonprotocol drugs, and recordkeeping lapses that could mask yet additional failings." *Trotter v. Florida*, 146 S. Ct. 755, 755 (2026) (Sotomayor, J., statement respecting denials of stay and certiorari). Justice Sotomayor noted that "the record to date is troubling," *id.*, and encouraged Florida's courts to inquire further, *id.* at 56. This Court has that opportunity now.

## III. Conclusion

The Court should enjoin or stay Guardado's execution.

Respectfully submitted,

/s/ Linda McDermott
LINDA MCDERMOTT
Chief, Capital Habeas Unit
/s/ Sean Gunn
SEAN GUNN
Assistant Federal Public Defender
Northern District of Florida
227 North Bronough St., Suite 4200
Tallahassee, Florida 32301
(850) 942-8818
linda_mcdermott@fd.org
sean_gunn@fd.org

*Counsel for Mr. Guardado*

## CERTIFICATE OF SERVICE

On October 13, 2026, this filing was electronically served on all attorneys attached to the CM/ECF docket.

/s/ Sean Gunn
Sean Gunn