IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**EXECUTION SCHEDULED FOR NOVEMBER 5, 2026 @ 6:00 p.m.**

JESSE GUARDADO,

*Plaintiff*,

v. Case No.: 3:26-cv-02596
CAPITAL CASE

RICHARD COMERFORD,
Secretary, Florida Department of Corrections,
in his official capacity

and

RANDALL POLK,
Warden, Florida State Prison,
in his official capacity

*Defendants*.
_____________________________________________/

**JOINT RESPONSE TO MOTIONS TO STAY AND TO INTERVENE IN § 1983 SUIT**

On October 16, 2026, William Reaves, a Florida death row inmate with an execution scheduled for October 20, 2026, filed an emergency motion for stay of execution and an emergency motion for permissive intervention in the above titled case. He seeks a stay to litigate an Eighth

Amendment challenge to Florida's lethal injection protocol.

Initially, Reaves's motion to stay and the motion to intervene in the § 1983 suit are untimely. Reaves committed the murder on September 23, 1986, and his case became final on November 7, 1994, after the disposition of certiorari review. *Reaves v. State*, 639 So. 2d 1 (Fla.), *cert. denied*, 513 U.S. 990 (1994); Fla. R. Crim. P. 3.851(d)(1)(B) (judgement becomes final "on the disposition of the petition for writ of certiorari by the United States Supreme Court"). The current Florida lethal injection protocols have been essentially the same since 2017, and Reaves could have raised the present action at any time since then, but instead waited until four days before his scheduled execution to seek to intervene in another inmate's § 1983 suit.

Guardado filed a 42 U.S.C. § 1983 suit challenging Florida's lethal injection protocol on Eighth Amendment grounds on September 28, 2026, seven days after Reaves's death warrant was signed. Further, Reaves was also aware of another on-going § 1983 challenge to the protocols (*Brant v. Palmer*, No. 3:13-cv-00412 (M.D. Fla)), as his counsel referenced it during the state court warrant litigation. Reaves could have moved to intervene much earlier. The motion to stay is untimely and must be denied. *See Walls v. Sec'y, Dep't of Corr.*, 161 F.4th 1281, 1285 (11th Cir. 2025) (finding

a defendant untimely by filing suit four months after he said his as-applied challenge accrued and only after his death warrant issued). Reaves is set to be executed tomorrow.

**Argument in Response to Motion to Stay**

To be entitled to a stay, the movant must meet four requirements: (1) a substantial likelihood of success on the merits; (2) an irreparable injury unless the stay is issued; (3) a stay would not substantially harm the other litigant; and (4) a stay would not be adverse to the public interest. *Humphreys v. Comm'r, Ga. Dep't of Corr.*, 161 F.4th 1300, 1306 (11th Cir. 2025) (denying a stay of execution to litigate a § 1983 suit raising an equal protection claim); *Glossip v. Gross*, 576 U.S. 863, 876 (2015). In addition, a defendant's dilatory conduct in filing suit alone can require federal courts to deny a stay. *Bucklew v. Precythe*, 587 U.S. 119, 150-51 (2019); *Walls*, 161 F.4th at 1285.

An inmate "seeking a stay of execution must satisfy all of the requirements for a stay." *Bowles v. DeSantis*, 934 F.3d 1230, 1246 (11th Cir. 2019) (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)) (emphasis in original); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (stating that a stay of execution "is appropriate only if the

moving party establishes all" of the four traditional factors for granting a stay). The Court in *Hill* stated that inmates "seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." *Hill*, 547 U.S. at 584 (citing *Barefoot v. Estelle*, 463 U.S. 880, 895–96 (1983)).

Dilatory Conduct

This Court should deny Reaves's motion to stay because of his dilatory conduct. *See Bucklew*, 587 U.S. at 150–51. "A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Dunn v. Ray*, 586 U.S. 1138 (2019) (vacating a stay of execution entered where claims could have been brought earlier); *Dunn v. Price*, 587 U.S. 929, 929 (2019) (same). Inmates who delay four months after their claims accrue cannot receive a stay of execution. *Walls*, 161 F.4th at 1285 (holding a condemned inmates' "admission that his suit could have been filed four months earlier dooms his motion" for a stay).

Reaves's inexcusable delay prohibits any stay. He could have sought to intervene or filed his own § 1983 suit raising an Eighth Amendment

claim like Guardado's long ago. Guardado filed suit in September 2026 and the Walls's records have been available since October 28, 2025. *See Walls*, 161 F.4th at 1285. Other condemned Florida inmates have been raising claims based upon the Walls's records since February 2026. *See Heath v. State*, 426 So. 3d 1253, 1261–64 (Fla. 2026). Reaves's attempt to intervene and assert these claims days before his execution is inexcusable. This Court should deny his motion to stay because of that inexcusable delay alone.

Substantial likelihood of success on the merits

The first factor of showing a substantial likelihood of success on the merits is also a crucial factor. *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (stating the "most important question regarding a stay of execution is whether the petitioner is substantially likely to succeed on the merits of his claim" citing *Jones v. Comm'r. Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016)); *Bowles v. DeSantis*, 934 F.3d 1230, 1247 (11th Cir. 2019) (noting the Eleventh Circuit has often declined to consider the remaining stay factors when an inmate has not shown a substantial likelihood of success on the merits). The United States Supreme Court has vacated a stay based on that factor alone. *Barr v. Lee*, 591 U.S. 979, 980 (2020). Notably, the key word is a "substantial"

likelihood.

There is no substantial likelihood of success on the merits of the Eighth Amendment claim before this Court. Florida's current three-drug protocol consists of etomidate, a hypnotic, rocuronium bromide, a paralytic, and potassium acetate, which causes cardiac arrest. (Doc. #1 at ¶21 citing App. A at 7-8).

Florida's current protocol does not violate the Eighth Amendment test for an execution method established by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), and *Glossip v. Gross*, 576 U.S. 863 (2015). That test requires that the plaintiff show a "substantial" risk that the protocol is "sure or very likely" to cause "serious illness and needless suffering." *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 50). As the Supreme Court itself observed, it "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Barr v. Lee*, 591 U.S. 979, 980 (2020).

Critical to the Eleventh Circuit's conclusion that Alabama's gas protocol violated the Eighth Amendment in the recent case of *Lee v. Comm'r, Ala. Dep't of Corr.*, No. 26-11864, 2026 WL 1651147 (11th Cir. June 8, 2026) (unpublished), was that the inmate was conscious. The Eleventh Circuit's reasoning in *Lee* does not apply to any protocol where

the inmate is unconscious. In stark contrast to Alabama's gas protocol, Florida inmates are given a "massive dose of 200 milligrams of etomidate" which renders them unconscious "within one minute" followed by a "consciousness check."[1] Any pulmonary edema which occurs during execution will occur when the Florida inmate is unconscious. *Cf. In re Ohio Execution Protocol Litig.*, 946 F.3d 287, 289-91 (6th Cir. 2019) (rejecting an Eighth Amendment challenge to Ohio's midazolam protocol based on pulmonary edema because the inmate would be "deeply sedated").

The contention that an inmate will suffer pain from pulmonary edema ignores the consciousness check that is part of Florida's protocol. Florida's current protocol mandates a consciousness check after the etomidate is administered. *Baze v. Rees*, 553 U.S. 35, 119-20 (2008) (Ginsburg, J.,

---

[1] *Long v. State*, 271 So. 3d 938, 944 (Fla. 2019) (noting the testimony "that the massive dose of 200 milligrams of etomidate would produce such a deep state of burst suppression and unconsciousness" it would render a person "unaware of noxious stimuli"); *Asay v. State*, 224 So. 3d 695, 701 (Fla. 2017) (quoting the drug insert of etomidate noting that "intravenous injection of etomidate produces hypnosis characterized by a rapid onset of action, usually within one minute"); *Lukehart v. State*, __ So. 3d __, 51 Fla. L. Weekly S139, 2026 WL 1480328, at *4 (Fla. May 27, 2026) (noting the fact that the administration of etomidate will render an inmate unconscious within one minute, after which the execution team performs a consciousness check because the execution cannot proceed until he is rendered unconscious).

dissenting) (condemning Kentucky's protocol for not including a consciousness check before the lethal third drug of potassium chloride is administered and detailing with approval Florida's multi-step consciousness check and advocating the adoption of similar measures to ensure the inmate is unconscious before the final lethal drug is administered). Reaves will not have a sensation of suffocating because he will be unconscious from the first drug in the protocol before any edema occurs.

The current suit argues that the possible use of expired etomidate will not keep the inmate unconscious and speculates that he will be paralyzed while he possibly feels air hunger from the pulmonary edema. This domino effect theory is pure speculation requiring the "expired" etomidate to be effective enough to render him unconscious during the consciousness check but not effective enough to keep him unconscious for the next 10 minutes until the third drug is administered. The claim requires a sort of "just right" Goldilocks scenario regarding the efficacy of the "expired" etomidate. However, mere possibilities are not sufficient to establish an Eighth Amendment violation regarding a method of execution. Rather, it must be "sure or very likely" under the controlling *Baze/Glossip* test. *Baze*, 553 U.S.

at 50; *Glossip*, 576 U.S. at 877.

Speculation cannot substitute for evidence. *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1264-65 (11th Cir. 2014) (explaining that speculation about a drug or its possible maladministration "cannot substitute for evidence that the use of the drug is "sure or very likely to cause serious illness and needless suffering." Indeed, *Glossip* itself involved a somewhat similar domino effect Eighth Amendment claim that the Supreme Court rejected. Glossip argued Oklahoma's three-drug protocol violated the Eighth Amendment based mainly on the prior execution of another inmate, Lockett, who moved when the third drug in the protocol was being injected, despite a consciousness check, because the drugs leaked into his tissue instead of entering his blood stream. *Glossip*, 576 U.S. at 872. Oklahoma increased the dose of the first drug and adopted other safeguards in response to that execution. *Id*. at 872-73, 886.

The Court rejected the claim for four reasons including that the plaintiff bears the burden of persuasion and he did not meet that burden. *Glossip*, 576 U.S. at 881, 888. The *Glossip* Court also concluded that the higher dose of midazolam was "likely to render an inmate insensate." *Id*. at 881, 888. The Court found that there was not a "substantial risk of severe

pain." *Id.* at 882. The Court found much of the assertions to be too "speculative" to warrant relief. *Id.* at 887. The Court also rejected the Eighth Amendment challenge because, aside from the Lockett execution, 12 other executions had been conducted using the same three-drug protocol "without any significant problems." *Id.* at 892.

The last reason relied upon by the *Glossip* Court for rejecting the Eighth Amendment challenge regarding a dozen successful executions using that protocol applies with even greater force to this Eighth Amendment challenge. Florida has carried out scores of executions using its current protocol "without any significant problems." Even if one inmate[2] received a lower dose of etomidate for some unexplained reason than the other executed inmates, that one factoid, when compared to the more than 40 successful executions using Florida's current protocol, does not amount to a viable Eighth Amendment challenge and certainly does not amount to a viable Eighth Amendment challenge when the toxicology reports from the other executed inmates show more typical amounts of etomidate. Reaves is unlikely to prevail on any challenge to the current protocol and

[2] Guardado alleges Samual Smithers received less etomidate than other inmates during his execution. (DE 1 at 10-11).

this Court should deny the stay.

The Eighth Amendment claim here involves a speculative domino effect from the use of expired etomidate that is itself based on conjecture from inventory logs. However, most importantly, the etomidate Florida used in the executions of Bates, Windom, Pittman, and Jones was not, in fact, expired.[3] Given that, Reaves utterly fails to meet the first and most crucial requirement for a stay.

<u>Irreparable injury</u>

The Eleventh Circuit has rejected the argument that irreparable injury from an execution is "self-evident" because that harm is equally "true" of every motion for a stay of execution. *Humphreys*, 161 F.4th at 1312. The Eleventh Circuit explained that an inmate must show how he will be irreparably injured by the underlying claim, not as a consequence of his original criminal conviction and death sentence. *Id.* at 1312. The "irreversible nature of the death penalty cannot, on its own, justify a stay." *Id.* Even if Reaves satisfies this second factor, he fails to meet the other

[3] On Monday, October 19, 2026, the State intends to file exhibits for the evidentiary hearing, including the execution logs for these four inmates showing that the execution team **and** the FDLE observer verified that the drugs used were current and not expired.

factors.

Balance of harms

Any harm to Reaves must be balanced against the State of Florida's "strong interest in enforcing its criminal judgements without undue interference from the federal courts." *Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Bowles v. DeSantis*, 934 F.3d 1230, 1247 (11th Cir. 2019) (denying a motion to stay an execution to litigate a § 1983 suit and noting the State's interest in real finality and timely enforcement of valid criminal judgments). The Supreme Court has observed that a stay of execution is "an equitable remedy" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004).

Reaves committed the murder in 1986, and his case became final in 1994. Reaves's § 2254 federal habeas petition was denied in 2017. *Reaves v. Sec'y Fla. Dep't of Corr.*, 872 F.3d 1137 (11th Cir. 2017), *cert denied*, 585 U.S. 1020 (2018). The State has a particular interest in the finality of the death sentence after federal habeas review. *Calderon v. Thompson*, 523 U.S. 538 (1998). As the Supreme Court has explained in a case involving recalling a mandate, the State has a particular interest in finality after

federal habeas review because, at that point, the State has "borne for years the significant costs of federal habeas review." *Thompson*, 523 U.S. at 556. "When lengthy federal proceedings have run their course and a mandate denying relief has issued, finality acquires an added moral dimension." *Id.* at 556. After federal habeas review, when the inmate "has already had extensive review of his claims in federal and state courts," the "State's interests in finality are all but paramount." *Id.* at 557. In the absence of a strong showing of actual innocence, "the State's interests in actual finality outweigh the prisoner's interest in obtaining yet another opportunity for review." *Id.* at 557. Reaves confessed and was found guilty in two separate trials, so there can be no claim of actual innocence. The balance of harms clearly favors the State. Reaves also fails the third traditional stay factor.

<u>Public interest</u>

The public interest weighs strongly against any stay of the execution being granted. *Humphreys*, 161 F.4th at 1312 (concluding the victims' interest in the timely enforcement of the death sentence was "enough for the public interest to weigh against a stay"). As the Supreme Court has observed, the people of a state and the surviving victims of capital crimes "deserve better" than the "long delays that now typically occur between the

time an offender is sentenced to death and his execution." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019). Rather, method-of-execution challenges should be "resolved fairly and expeditiously." *Id.* at 150 (emphasis added). Such litigation, for example in *Brant*, goes on for years. While this Court set the evidentiary hearing in Guardado's case for October 22, that date is *after* Reaves's scheduled execution and that hearing and any ensuing order may not be completed that day.

The Eleventh Circuit has repeatedly rejected the argument that the State will only suffer a "fleeting inconvenience" from having to reschedule the execution later if a stay is granted. *Bowles*, 934 F.3d at 1247-48 (quoting *Brooks v. Warden*, 810 F.3d 812, 824-25 (11th Cir. 2016)). Reaves's case has been final for years. He fails the fourth stay factor as well because any stay would be adverse to the public interest.

In sum, stays of execution "should be the extreme exception, not the norm." *Bucklew*, 587 U.S. at 150. Federal courts can and should protect settled state judgments from undue interference by invoking their equitable powers to dismiss or curtail suits that are based on speculative theories. *Id.* at 151. The Eighth Amendment claim before this Court involves a speculative domino effect from the purported use of expired

etomidate that is itself based on conjecture.

Reaves's inexcusable delay only defeats his motion for a stay of execution. He also fails the first, third, and fourth traditional stay factors; therefore, the motion for a stay of execution should be denied.

**Reasons to Deny the Motion to Intervene**

The motion to intervene in the § 1983 suit should be denied. This suit has been ongoing since September 2026, yet Reaves did not try to intervene until four days before his execution. His motion to intervene is anything but timely. *See Cooey v. Strickland*, 484 F.3d 424, 425 (6th Cir. 2007) (finding a condemned inmate's attempt to intervene in a lethal injection suit four days before his scheduled execution was "untimely as a matter of law"); Fed. R. Civ. P. 24(b) (permitting intervention only on a "timely motion").

In any event, Reaves cannot benefit from this suit. This suit should instead be dismissed under Federal Rule of Civil Procedure 12(b)(6) for three reasons: (1) it is untimely under the applicable statute of limitations; (2) Reaves's failure to exhaust the claim, as required by the Prisoner Litigation Reform Act (PLRA); and (3) for failure to state a valid Eighth Amendment claim under controlling Supreme Court precedent. The motion

to intervene should be denied as untimely and for the reasons stated above.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL OF FLORIDA

/s/ Lisa-Marie Lerner
LISA-MARIE LERNER
Senior Assistant Attorney General
Florida Bar No. 698271
Lisamarie.Lerner@MyFloridaLegal.com;
CapApp@MyFloridaLegal.com

1515 N. Flagler Dr. 9th Floor
West Palm Beach, Florida 33401
Office: (561) 837-5016
Facsimile: (561) 837-5108

COUNSEL FOR DEFENDANTS

CERTIFICATE OF COMPLAINCE WITH RULE 3.01(b)

I certify that this **Joint Response to Motions to Stay and to Intervene** is within the 20-page limit governing the length and content of response to motions under the local rules. M.D. Fla. Loc. R. 3.01(c).

/s/ Lisa-Marie Lerner
LISA-MARIE LERNER
Senior Assistant Attorney General

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **Joint Response to Motions to Stay and to Intervene** I electronically filed on October 19, 2026, the foregoing with the Clerk of Court by using CM/ECF which will send a notice of electronic filing to the following: Linda McDermott, Chief, Capital Habeas Unit, linda_mcdermott@fd.org; Sean Gunn, Assistant Public Defender of CHU-N, sean_gunn@fd.org; Bri Lacy, Assistant Capital Collateral Counsel-South, **LacyB@ccsr.state.fl.us, pleadings@ccsr.state.fl.us**; Yiitsodirah Final, Staff Attorney at **FinalY@ccsr.state.fl.us**, Capital Collateral Regional Counsel-South Region; and the Florida Supreme Court, **warrant@flcourts.org and canovak@flcourts.org**.

/s/ Lisa-Marie Lerner
LISA-MARIE LERNER
Senior Assistant Attorney General